UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT SNEDEKER, | |
| Plaintiff, | Case No. 16-cv-10907 |
| v. | |
| RICH GIROT, individually and in his official capacity as the Chief of Police of the City of Braidwood, and the CITY OF BRAIDWOOD, | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Snedeker ran for Mayor of the City of Braidwood in 2014. Defendant Rich Girot, Braidwood's Chief of Police at the time, reviewed Plaintiff's background using a law enforcement database and filed an objection to Plaintiff's candidacy in light of Plaintiff's extensive (and uncontroverted) criminal history. Plaintiff subsequently withdrew from the race.

Plaintiff now brings two claims pursuant to 42 U.S.C. § 1983 against both Girot and the City: Count 1, for violation of his right to equal protection under the Fourteenth Amendment, and Count 2, for impermissible retaliation in violation of his First Amendment rights. *See generally* [18] at 1-9. Currently pending before the Court are separate motions to dismiss filed by the City and Girot. [23], [27]. For the reasons explained below, those motions are granted in part, without prejudice, and denied in part.

## I. Background[1]

Plaintiff has a long criminal history, including a guilty plea for the manufacture or delivery of narcotics and a conviction for domestic battery. [23] at 4. He has also "been a longtime advocate of open government" and a public critic of "numerous actions of the Defendant City of Braidwood." [18] at 2.

Undeterred by his status as a convicted felon, Plaintiff initiated a campaign for Mayor of Braidwood in December 2014. *Id.* at 3. Two days later Girot, in his capacity as the City's Chief of Police, ran an inquiry on a law enforcement database regarding Plaintiff, which uncovered Plaintiff's prior convictions. *Id.* Girot then lodged a formal complaint opposing Plaintiff's candidacy. *Id.* Unidentified "agents and employees" of the City, with Girot's "knowledge and authorization," also used the results of the database inquiry to "degrade, humiliate and insult the Plaintiff in an open city council meeting." *Id.* Snedeker subsequently withdrew from the race in January 2015. *Id.*

In February 2015, Snedeker filed a complaint with the Illinois State Police (ISP) regarding Girot's conduct. *Id.* In March 2015, the ISP sent Snedeker a letter in response. *Id.* The ISP confirmed that a database "inquiry was made on [his] identifiers by the Braidwood Police Department on the date in question." [18-1] at 1. The ISP, per its "policy and procedure," then "requested that [the] Braidwood Police Department conduct an internal investigation to determine the reason for the

---

[1] This section is premised upon both the allegations of Plaintiff's Amended Complaint [18], which are taken as true for the purposes of resolving the present motions, and matters in the public record that are subject to judicial notice. *See* Fed. R. Evid. 201.

inquiry. Their investigation revealed that the inquiry was made for a legitimate criminal justice purpose and as part of their regular practices." *Id.*

This "legitimate criminal justice purpose" remains unidentified in the limited record before the Court. Plaintiff's Amended Complaint implicitly assumes that this refers to his interactions with the City of Braidwood Police Department in November 2014, when Plaintiff called "to complain about harassing phone calls he was receiving." [18] at 3; *see also id.* at 5 ("At all relevant times, it was unheard of, and remains unheard of, for any citizen of Defendant City of Braidwood who calls the police, as the victim," to have a database investigation about "them almost a month after the fact.").

Unsatisfied with the disposition of his complaint to the ISP, Plaintiff initiated this lawsuit in November 2016. [1] at 1.

## II. Legal Standard

The present motions simultaneously contend that Plaintiff's case must be dismissed for lack of subject matter jurisdiction (pursuant to Federal Rule of Civil Procedure 12(b)(1)) and for failure to state a claim for which relief can be granted (pursuant to Federal Rule of Civil Procedure 12(b)(6)). Because the City's "Rule 12(b)(1) motion to dismiss for lack of Article III standing accepts as true the facts alleged" in the Amended Complaint, the standards governing both motions are substantively identical. *Halperin v. Int'l Web Servs., LLC*, 70 F. Supp. 3d 893, 896 (N.D. Ill. 2014).

In both instances, the Court must accept the Amended Complaint's well-pleaded factual allegations as true, with all reasonable inferences drawn in the Plaintiff's favor. *Id.* The Court's consideration is also limited to allegations set forth in the Amended Complaint, documents that are attached to the Amended Complaint or referred to in it, and "information that is properly subject to judicial notice." *Williamson v. Curran,* 714 F.3d 432, 436 (7th Cir. 2013).

### III. Analysis

#### A. Plaintiff Has Alleged a Sufficiently Definite Injury

The City first argues that Plaintiff lacks standing, and therefore, this Court must dismiss both of his claims. [23] at 2-5.

Since this argument involves a jurisdictional prerequisite, the Court considers it first. *Halperin,* 70 F. Supp. 3d at 897. To show standing, Plaintiff must "establish an 'injury in fact' caused by the defendant and redressable by the court." *J.P. Morgan Chase Bank, N.A. v. McDonald,* 760 F.3d 646, 650 (7th Cir. 2014); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The injury-in-fact "showing is not meant to be a difficult one, particularly at the pleading stage." *McDonald*, 760 F.3d at 650. Here, the City claims that Plaintiff did not suffer an injury-in-fact because he, as a felon, was not eligible to hold municipal office under Illinois law. *See* 65 ILCS 5/3.1-10-5(b); *see also* [23] at *5 (arguing that Plaintiff lacks standing because his disqualification was "not caused by the Defendants' conduct"). Plaintiff's claims, however, assert injuries beyond disqualification. Specifically, Plaintiff has competently alleged that Girot: (1) impermissibly

4

searched his name on the law enforcement database system; (2) orchestrated his humiliation at a city council meeting; and (3) filed a formal objection to his candidacy for mayor. [18] at 3. These are sufficiently definite injuries to establish standing, especially "at the pleading stage." *McDonald*, 760 F.3d at 650; *see also Sierra Club v. Franklin Cnty. Power of Ill., LLC*, 546 F.3d 918, 925 (7th Cir. 2008) ("[T]he injury-in-fact necessary for standing need not be large, an identifiable trifle will suffice.") (internal quotation marks omitted); *Youth Alive v. Hauppauge Sch. Dist.,* No. 08-cv-1068, 2012 WL 4891561, at *3 (E.D.N.Y. Oct. 15, 2012) ("Although the injury-in-fact requirement is not as stringent in Equal Protection cases, a plaintiff must still establish that she suffered *some* sort of identifiable harm . . . .").

### B. Municipal Liability

The City also argues that Plaintiff's claims fail pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690 (1978). *Monell* allows a party to bring a claim against a municipality for a federal civil rights violation under 42 U.S.C. § 1983, which is precisely what Plaintiff has done here.

To succeed on such a claim, however, Plaintiff must show that an official municipal policy caused his constitutional injury. *See Lewis v. Cnty. of Cook*, No. 10-cv-1313, 2011 WL 839753, at *13 (N.D. Ill. Feb. 24, 2011). An official policy may be established via three different methods of proof: (1) an express policy; (2) a widespread practice that is so entrenched and well-known that it carries the force of policy; or (3) the actions of an individual who possesses the authority to make final

5

policy decisions on behalf of the municipality. *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012).

Here, Plaintiff concedes that the first two methods are inapplicable, but contends that Girot "was the final policymaker" at the City Police Department. [18] at 2; *see also* [31] at 7 ("[I]n the case at bar where there exist[s] no widespread policy and only a single action of deprivation occurring . . . ."). As such, this Court focuses upon *Monell*'s third method of proof.

The City insists that Girot cannot be a final policymaker because his actions were subject to review by the City Council. [23] at 8; *see also* City of Braidwood Ordinance 50-37 ("The chief of the police department may make or prescribe such rules and regulations for the conduct and guidance of the members of the department as he shall deem advisable. Such rules, when approved by the council, shall be binding on such members."); City of Braidwood Ordinance 2-146 (generally prohibiting political activity while on duty); 20 Ill. Adm. Code 1240.80 ("[Database inquiries] shall not be used for personal purposes.").

The City's argument is premised upon *Palka v. City of Chicago*, which held that because a municipal employee's "decisions were subject to review and implementation by a higher authority, he cannot be a final policymaker for purposes of municipal § 1983 liability." 662 F.3d 428, 435 (7th Cir. 2011). *Palka*, however, is of limited utility here. As a preliminary matter, *Palka* concerned a motion for summary judgment, not a motion to dismiss. *Id*. Also, the municipal

employee in *Palka* was a supervisor at the Chicago Police Academy, not the Chief of Police. *Id.* at 430.

*Sailsbery v. Village of Sauk Village*, No. 15-cv-10564, 2016 WL 4701446 (N.D. Ill. Sept. 8, 2016), is more instructive. The plaintiff in *Sailsbery* alleged that the local mayor and public safety director had retaliated against her and discriminated against her in violation of Section 1983. *Id.* at *1-2. The defendants moved to dismiss, arguing that since they "had to seek permission and review from superiors," they "could not have had final policymaking authority" for *Monell* purposes. *Id.* at *9. The court rejected this contention, finding, among other things, that defendant's "position as Public Safety Director, with direct oversight of the entire police department, plausibly suggest[s] that [he] could exercise final policymaking authority" with respect to the alleged unconstitutional behavior. *Id.* Ultimately, "summary judgment is a better stage to determine these questions" regarding the "scope of [defendants'] delegated authority." *Id.*

Given the facts in this case, *Sailsbery* controls. Whether Girot possessed the requisite policymaking authority to extend *Monell* liability here is a question best answered with the benefit of a full record. The Court accordingly rejects the City's *Monell* argument and turns to the substance of Plaintiff's claims.

### C. Count 1: Equal Protection

Plaintiff has brought a "class of one" equal protection claim, which means he must competently allege that: "(1) a state actor has intentionally treated him differently than others similarly situated; and (2) there is no rational basis for the

7

difference in treatment." *See Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 492-93 (7th Cir. 2017).

### 1. "Similarly Situated"

To qualify as "similarly situated," Plaintiff "and his comparators (those alleged to have been treated more favorably) must be identical or directly comparable in all material respects." *Pinedo v. City of Chicago*, No. 10-cv- 6370, 2011 WL 829305, at *2 (N.D. Ill. Mar. 4, 2011) (internal quotation marks omitted). While this comparison is "usually" a question of fact, "dismissal at the pleading stage is appropriate if the plaintiff fails to allege facts tending to show that [he] was similarly situated to any of the comparators." *Id.* (internal quotation marks omitted). The "similarly situated" requirement is particularly "critical to a class-of-one equal protection claim, since the purpose of entertaining such a claim is not to constitutionalize all tort law." *Id.* (internal quotation marks omitted).

Plaintiff has failed to clear this preliminary hurdle. [23] at 5. In fact, Plaintiff has not identified *any* specific comparators. The general allusions to comparators in the Amended Complaint are also facially deficient:

> Plaintiff was similarly situated to other individuals involved in interactions with DEFENDANT GIROT and other DEFENDANT CITY OF BRAIDWOOD agents/employees including, but not limited to, police investigations, seizures and/or arrests wherein DEFENDANT GIROT, with the approval and knowledge of DEFENDANT CITY OF BRAIDWOOD did not fabricate evidence or provide a false rationale against those individuals . . . .
>
> Over the past ten years, numerous individuals have run for public office in the CITY OF BRAIDWOOD. In no

8

> other case was a candidate for public office subjected to a [database] inquiry by the Chief of Police.

[18] at 5-6. *See Muczynski v. Lieblick,* No. 10-cv-81, 2011 WL 613573, at *4-7 (N.D. Ill. Feb.11, 2011) (dismissing "class of one" equal protection claim, as plaintiff's allegation that he was "similarly situated" to "other individuals with whom the Defendant Officers had an investigatory basis to communicate who did not have false evidence generated against them and were not arrested or prosecuted" amounted to an insufficient, "conclusory" legal statement).

Given Plaintiff's failure to identify a single comparator, Defendants' motions to dismiss are granted with respect to Count 1. This dismissal, however, is without prejudice. The Court will permit Plaintiff a final opportunity to identify adequate comparators, to the extent he can do so within the strictures of Rule 11.

### 2. "Rational Basis"

The Court further notes that Count 1, as alleged, does not satisfy the more searching "rational basis" inquiry in "class of one" equal protection claims. *See D.B. ex rel. Kurtis B. v. Kopp,* 725 F.3d 681, 686 (7th Cir. 2013) (To "get past a Rule 12(b)(6) motion to dismiss on a class of one equal protection claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.") (internal quotation marks omitted); *see also Miller v. City of Monona,* 784 F.3d 1113, 1121 (7th Cir. 2015) ("[E]ven at the pleadings stage, all it takes to defeat a class-of-one claim is a *conceivable* rational basis for the difference in treatment.") (internal quotation marks omitted).

The Court declines to resolve this question now, because Defendants did not fully develop this argument in their briefs, and because this Court has already dismissed Count 1 in light of Plaintiff's inability to identify adequate comparators. The Court nevertheless raises the issue here with the expectation that, should Plaintiff elect to re-plead his equal protection claim, he must also address this deficiency or face a potential dismissal with prejudice.

### D. Count 2: Retaliation

To plead a First Amendment retaliation claim, Plaintiff must competently allege that: (1) his speech was constitutionally protected; (2) he suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in Defendants' actions. *See Campbell v. City of Chicago*, No. 16-cv-6000, 2017 WL 878730, at *2 (N.D. Ill. Mar. 6, 2017).

#### 1. Plaintiff's Protected Speech

The City argues that Plaintiff "was not engaged in activity protected by the First Amendment because he was not qualified to run for Mayor in light of his criminal history." [23] at 5. Plaintiff alleges, however, that as a longtime "advocate of open government," he "had been publicly critical of numerous actions" taken by the City, and he had provided related "information to the local press." [18] at 2-3. These allegations, construed in the light most favorable to Plaintiff, suggest that Plaintiff complained about the operation of his municipal government to the local media. This is a paradigmatic example of protected speech, and the Court rejects any suggestion to the contrary. *See Wis. Right to Life State Political Action Comm.*

*v. Barland*, 664 F.3d 139, 152 (7th Cir. 2011) ("The free flow of political speech 'is central to the meaning and purpose of the First Amendment.'") (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 329 (2010)); *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 400 (2000) ("The Court's opinion does not question the constitutional importance of political speech or that its protection lies at the heart of the First Amendment. Nor does it question the need for particularly careful, precise, and independent judicial review where, as here, that protection is at issue.").

### 2. Plaintiff's Deprivation

Finally, Girot claims that Count 2 fails because "Plaintiff did not suffer a deprivation (removal from the ballot) due to the Defendant's alleged acts but due to his felony criminal record." [37] at 6. This argument reflects an unduly narrow reading of the Amended Complaint, as explained below.

To determine whether an alleged deprivation is sufficiently serious to support a claim for retaliation, the Court asks whether the deprivation would deter "a person of ordinary firmness" from exercising their First Amendment rights. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). This is not a high threshold—"[a]ny deprivation under color of law that is likely to deter the exercise of free speech" qualifies. *See Power v. Summers*, 226 F.3d 815, 820 (7th Cir. 2000). Indeed, "even something as trivial as making fun of an employee for bringing a birthday cake to the office to celebrate another employee's birthday" could represent a sufficient deprivation, so long as "the circumstances are such" that this behavior would serve

11

as "an effective deterrent to the exercise of a fragile liberty." *Id.* (internal citations omitted).

Plaintiff contends that he made various public complaints about the City, and in response, Girot ran a database search on Plaintiff, caused other City employees to embarrass Plaintiff with those results at a city council meeting, and filed a formal objection to Plaintiff's candidacy. *See supra* at 2-3. At this early stage of the proceedings, such alleged deprivations could "deter a person of ordinary firmness" from exercising their First Amendment rights, and they are accordingly sufficient for the purposes of stating a claim for retaliation. This is true even if Girot's actions, had they been "taken for a different reason, might otherwise have been proper." *Benson v. Allphin*, 544 F. Supp. 464, 467 (N.D. Ill. 1982); *see also Bridges*, 557 F.3d at 552 ("Even though some of these allegations would likely not be actionable in and of themselves, if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under § 1983.").

## IV. Conclusion

Both the City of Braidwood's Motion to Dismiss Plaintiff's First Amended Complaint [23] and Former Chief Rich Girot's Motion to Dismiss Plaintiff's First Amended Complaint [27] are granted in part and denied in part. Count 1, Plaintiff's "class of one" equal protection claim, is dismissed without prejudice. Count 2, Plaintiff's retaliation claim, remains pending against both defendants.

Date: August 28, 2017

ENTERED:

_____
John Robert Blakey
United States District Judge